Exhibit 1

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

**ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*
Navi Singh Dhillon (SBN 279537); Christopher J. Carr (SBN 184076)
Paul Hastings LLP
101 California Street, 48th Floor, San Francisco, CA 94111
TELEPHONE NO.: 415-856-7000          FAX NO.:
EMAIL ADDRESS: navidhillon@paulhastings.com; chriscarr@paulhastings.com
ATTORNEY FOR *(Name):* Petitioner and Plaintiff California Land Stewardship Council LLC

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SHASTA**
STREET ADDRESS: 1500 Court Street
MAILING ADDRESS:
CITY AND ZIP CODE: Redding 96001
BRANCH NAME: Main Courthouse

**FILED**

FEB 13 2024

SHASTA COUNTY SUPERIOR COURT
BY: A. WADDLE, DEPUTY CLERK

CASE NAME: California Land Stewardship Council LLC v. County of Shasta and its Board of Supervisors

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: 204273 |
|---|---|---|
| ☒ Unlimited (Amount demanded exceeds $35,000) ☐ Limited (Amount demanded is $35,000 or less) | ☐ Counter ☐ Joinder Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE: DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)

**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☒ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400-3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is   ☒ is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply):* a. ☐ monetary b. ☒ nonmonetary; declaratory or injunctive relief c. ☐ punitive
4. Number of causes of action *(specify):* Two
5. This case ☐ is   ☒ is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: February 13, 2024

Navi Singh Dhillon
_____
(TYPE OR PRINT NAME)          (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.   **Page 1 of 2**

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. January 1, 2024]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courts.ca.gov



CM-010

# INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

## CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
　Asbestos Property Damage
　Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
　Medical Malpractice– Physicians & Surgeons
　Other Professional Health Care Malpractice
Other PI/PD/WD (23)
　Premises Liability (e.g., slip and fall)
　Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
　Intentional Infliction of Emotional Distress
　Negligent Infliction of Emotional Distress
　Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
　Legal Malpractice
　Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
　Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
　Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
　Negligent Breach of Contract/ Warranty
　Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
　Collection Case–Seller Plaintiff
　Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
　Auto Subrogation
　Other Coverage
Other Contract (37)
　Contractual Fraud
　Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
　Writ of Possession of Real Property
　Mortgage Foreclosure
　Quiet Title
　Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
　Writ–Administrative Mandamus
　Writ–Mandamus on Limited Court Case Matter
　Writ–Other Limited Court Case Review
Other Judicial Review (39)
　Review of Health Officer Order
　Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
　Abstract of Judgment (Out of County)
　Confession of Judgment *(non-domestic relations)*
　Sister State Judgment
　Administrative Agency Award *(not unpaid taxes)*
　Petition/Certification of Entry of Judgment on Unpaid Taxes
　Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
　Declaratory Relief Only
　Injunctive Relief Only *(non harassment)*
　Mechanics Lien
　Other Commercial Complaint Case *(non-tort/non-complex)*
　Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
　Civil Harassment
　Workplace Violence
　Elder/Dependent Adult Abuse
　Election Contest
　Petition for Name Change
　Petition for Relief From Late Claim
　Other Civil Petition

1   NAVI SINGH DHILLON (SBN 279537)
    navidhillon@paulhastings.com
2   CHRISTOPHER J. CARR (SBN 184076)
    chriscarr@paulhastings.com
3   DYLAN J. CROSBY (SBN 299536)
    dylancrosby@paulhastings.com
4   LUCAS V. GRUNBAUM (SBN 314180)
    lucasgrunbaum@paulhastings.com
5   PAUL HASTINGS LLP
    101 California Street, 48th Floor
6   San Francisco, California 94111
    Telephone:  (415) 856-7000
7
    Attorneys for Petitioner and Plaintiff
8   CALIFORNIA LAND STEWARDSHIP
    COUNCIL LLC
9

10

11                  SUPERIOR COURT OF CALIFORNIA

12                       COUNTY OF SHASTA

13

14  CALIFORNIA LAND STEWARDSHIP          Case No.  **204273**
    COUNCIL LLC,
15                                       **VERIFIED PETITION FOR WRIT OF**
                 Petitioner and Plaintiff,   **MANDATE AND COMPLAINT**
16
           v.                            UNLIMITED JURISDICTION
17
    COUNTY OF SHASTA and its BOARD OF
18  SUPERVISORS,

19               Respondents and Defendants.

20

21

22

23

24

25

26

27

28

**FILED**

FEB 13 2024

SHASTA COUNTY SUPERIOR COURT
BY: A. WADDLE, DEPUTY CLERK

By Fax

- 1 -

1       1.     Petitioner and Plaintiff California Land Stewardship Council LLC (Petitioner)

2 brings this civil action against Respondents County of Shasta (County) and its Board of Supervisors

3 (Board), and alleges as follows:

**THE CONTROVERSY**

4

5       2.     Over the objection of the County Fire Chief, the County Sheriff, and the County's

6 own lawyers and staff, the Board gave away millions of dollars of public funds via an agreement

7 with the developer of a casino. More specifically, the dispute concerns the Board's July 25, 2023,

8 unlawful approval of an "Intergovernmental Agreement" (Agreement) between the County and the

9 Redding Rancheria, a federally recognized Indian tribe (Tribe). The Tribe seeks to relocate its

10 existing casino to a nearby undeveloped 232-acre parcel of land on the banks of the Sacramento

11 River, known as "Strawberry Fields." There, the Tribe wants to build a new 1,123,272 square foot

12 gaming complex (Project), which includes a 9-story hotel that, according to the County Fire Chief,

13 would be the tallest building between Sacramento, California and Portland, Oregon.

14       3.     The Agreement commits the County to provide services for the Project for a period

15 of up to 30 years, including law enforcement, fire, and other emergency services. In exchange, the

16 Tribe is required to make certain "non-recurring" (or one-time) and "recurring" payments to the

17 County. The claimed purpose of those payments is to mitigate the Project's impacts related to

18 providing County services, and other fiscal impacts relating to traffic and roads. However, the

19 Board did not disclose or perform any cost-benefit or other analysis to determine whether the

20 payments called for by the Agreement were actually sufficient to compensate the County. In fact,

21 the payments are grossly insufficient by any measure. What's more, the Board disregarded a

22 "scathing" report about the Agreement prepared by the County's own outside counsel.

23       4.     The Tribe has been attempting to obtain the necessary governmental approvals to

24 relocate its casino, including from the federal Bureau of Indian Affairs (BIA) and the California

25 Senate. The Board has historically opposed the Project, given its potential to cause significant

26 impacts to the community. For example, in an October 2019 letter to the BIA, the Board expressed

27 its concern that the Project would have a "detrimental impact on the Shasta County community that

28 cannot be adequately mitigated."

VERIFIED PETITION AND COMPLAINT

1    5.    By January 2023, four of the five Supervisors who had opposed the Project had been

2  replaced.  In early 2023, the Tribe and one or more Supervisors began negotiating the terms of the

3  Agreement.  The one remaining Supervisor who had voted against the Project in 2019 and 2022

4  was, in her own words, kept "in the dark" as to the negotiations.  Likewise, the County Counsel,

5  Risk Manager, Sheriff, and Fire Chief were not kept apprised of the negotiations.

6    6.    At the July 25, 2023, meeting, County staff and public safety department heads made

7  formal presentations to the Board opposing the proposed Agreement.  County staff recommended

8  that the Board delay approving the Agreement to allow staff more time to analyze the Project's

9  potential impacts.  Staff presented to the Board the below table, comparing (without adjusting for

10  inflation) the drastic differences between the recurring and non-recurring payments the County

11  would receive under the proposed Agreement and those received by other local governments in

12  connection with similar agreements for similar sized projects.

| California Intergovernmental Agreement Comparison | | | | | | |
|---|---|---|---|---|---|---|
| Agreement: | Shasta County Redding Rancheria (Proposed) | Sonoma County Graton Rancheria (2012) | City of Rohnert Park Graton Rancheria (2013) | Madera County North Fork Rancheria (2004) | City of Madera North Fork Rancheria (2006) | Yuba County Enterprise Rancheria (2002) |
| Acres | 232 | 254 | 254 | 305 | 305 | 40 |
| Square Foot | 69,500 | 65,000 | 65,000 | 68,150 | 68,150 | 91,000 |
| # of Machines | 1,200 | 3,000 | 3,000 | 2,000 | 2,000 | 2,100 |
| # of Rooms | 250 | 200 | 200 | 200 | 200 | 170 |
| One-Time Payments | $3.6M | $5.1M | $9.7M | $6.9-17.9M | $6.3M-10.3M | $1.9M |
| Recurring Payments | $50k | $12.2M | $12.0M | $4.0M | $1.1M | $5.0M |

19  Staff explained that the "Agreement would not fully mitigate the anticipated costs related to the

20  new Casino for providing law enforcement, fire emergency services, and the costs to maintain the

21  County roads and traffic controls."

22    7.    Consistent with the concerns of staff, the Sheriff and Fire Chief also opposed the

23  proposed Agreement.  The Sheriff informed the Board that the payments would be insufficient to

24  cover the cost to the County related to providing law enforcement services.  He stated: "I am

25  charged with looking out for the public safety of this County, and that's why I am up here urging

26  you and pleading with you that you defer your decision on this Agreement and give us a chance to

27  go back to the table and negotiate with the Tribe and hopefully come up with a more equitable

28  agreement."  The Fire Chief reached the same conclusion: "Just like the Sheriff, I am proposing to

-3-

VERIFIED PETITION AND COMPLAINT

1   you to make sure that all the information that you guys have is accurate in a timely manner and you

2   have all the fact[s] behind what, how that's going to impact, not only my shop but the Sheriff's

3   shop and everybody else. . . . And I obviously don't have the tools right now as your fire chief in

4   order to mitigate a significant event at that casino."

5          8.     The County Counsel warned the Board that his office had not yet reviewed the

6   Agreement.  Nor had the County's Risk Manager reviewed it.  Shasta County Contracts Manual,

7   Administrative Policy 6-101 (Contracts Manual or Policy), requires non-standard contracts, such

8   as the proposed Agreement, to be reviewed and approved as to form by the County Counsel and

9   reviewed and approved by the County's Risk Manager.

10          9.     Undeterred, the Board purported to vote to waive the Policy's requirements, without

11   first taking any formal action to amend the Policy to authorize such a waiver.  It then voted to

12   approve the Agreement, as amended to remove the requirement that it "be approved as to form by

13   the County Counsel."

14         10.     The Agreement is illegal.  For example, the Board ignored its own procedures for

15   approving contracts.  The Board also made its decision based on no evidence, recklessly committing

16   the County to a 30-year term.  The financial terms of the Agreement are egregious and constitute

17   waste of public funds.  In short, the Board failed to comply with its legal duties and prompt judicial

18   intervention is needed to protect the County.

19   <div align="center">**THE PARTIES**</div>

20         11.     Petitioner seeks to promote responsible government and advance the interests of its

21   members.  Petitioner's members include residents of the County who have either: (i) been assessed

22   and are liable for a tax that funds the County; or (ii) within one year before the commencement of

23   this action, paid a tax that funds the County.  Petitioner's members are concerned with the negative

24   impacts to the County and its residents that will result from the Board's unlawful approval of the

25   Agreement.  Accordingly, Petitioner has a beneficial interest in the issuance of a writ within the

26   meaning of Code of Civil Procedure section 1086.

27         12.     Respondent County is a political subdivision of the State of California.  Respondent

28   Board is the local governing body for the County.

<div align="center">-4-</div>

**JURISDICTION AND VENUE**

13.     This Court has jurisdiction over the subject matter of this action under Code of Civil Procedure, sections 526a and 1085.

14.     Venue is proper in this Court because this action involves a challenge to the Board's unlawful approval of the Agreement.  (Code Civ. Prov. § 394, subd. (a).)

15.     The Board approved the Agreement on July 25, 2023.  That decision is final and the underlying administrative process is complete.  Accordingly, any exhaustion requirement has been met or is excused due to futility.

**THE LAW:  COUNTY CONTRACTS MANUAL AND PROHIBITION AGAINST WASTE**

**A.      Shasta County Contracts Manual, Policy 6-101.**

16.     The Contracts Manual establishes policies and procedures for the County to enter into agreements or contracts.  The Board formally adopted the Contracts Manual as Policy No. 6-101.  The Contracts Manual has been amended by the Board on numerous occasions via Policy Resolutions.

17.     Section 1.3 of the Contracts Manual "describes the responsibilities and procedures that apply generally to contracts," including the "responsibility for obtaining the best terms" for the County (§ 1.3.4), and the requirement that all County contracts be reviewed and approved by the County Counsel and the County's Risk Manager (§ 1.3.3).  Section 1.3.3 of the Contracts Manual provides, in relevant part, that:

> With the exception of certain pre-approved standard contracts and other specified low-risk contracts identified in this Manual (see e.g., Section 5.6), all contracts must be reviewed and signed for approval as to form by County Counsel.
>
> [¶]
>
> The Risk Manager . . . must approve and sign all County contracts except those standard format contracts which department heads or the CEO can independently sign.

18.     The Contracts Manual does not permit the Board to waive compliance with these requirements.

- 5 -

VERIFIED PETITION AND COMPLAINT

**B.      Taxpayer Actions under Section 526a.**

19.      Code of Civil Procedure, section 526a permits a taxpayer to bring an action to restrain or prevent an "illegal" or "wasteful" expenditure of public money.  "No showing of special damage to a particular taxpayer is required as a requisite for bringing a taxpayer suit." (*Connerly v. State Personnel Bd.* (2001) 92 Cal.App.4th 16, 29.) California courts recognize the importance of taxpayer suits to ensure government accountability: "'[T]he individual citizen must be able to take the initiative through taxpayers' suits to keep government accountable on the state as well as on the local level." (*Vasquez v. Cal.* (2003) 105 Cal.App.4th 849, 854.)

20.      California courts broadly and liberally construe Section 526a to promote its remedial purpose. (See *Blair v. Pitchess* (1971) 5 Cal.3d 258, 267-68.) In that connection, taxpayer actions are permitted for both "actual or threatened expenditures of public funds." (*Waste Mgmt. of Alameda Cnty., Inc. v. Cnty. of Alameda* (2000) 79 Cal.App.4th 1223, 1240, disapproved on other grounds.) Taxpayer actions may be used to challenge an agency's decision to enter into an illegal contract. (See, e.g., *Miller v. McKinnon* (1942) 20 Cal.2d 83, 89; *A.J. Fistes Corp. v. GDL Best Contractors, Inc.* (2019) 38 Cal.App.5th 677, 689.) An injunction preventing the illegal or wasteful expenditure of funds is explicitly authorized. (Code Civ. Proc. § 526a, subd. (a).)

## FACTUAL BACKGROUND

**A.      The Tribe's Proposed Project and the County's Historic Opposition.**

21.      The Tribe currently conducts gaming activities at its existing Win-River Casino located just off Interstate 5 in Redding, California.  The Tribe seeks the County's assistance in relocating its existing casino 1.6 miles northeast to the Strawberry Fields property.  The Tribe plans to construct a massive 1,123,272 square foot gaming complex at Strawberry Fields, including a 69,541 square foot casino, a 52,000 square foot event center, and a 9-story, 250-room hotel.

22.      In 2003, the Tribe submitted a "fee-to-trust" application to the BIA to relocate its gaming facility from its existing location to Strawberry Fields.  The BIA denied the Tribe's request. In 2016, the Tribe re-submitted its request to the BIA, which agreed to take the Tribe's request under consideration to give the Tribe time to prove the Project "would not be detrimental to the surrounding community." (25 U.S.C. § 2719(a).)

- 6 -

VERIFIED PETITION AND COMPLAINT

1   23.     Between 2016 and 2022, the Redding City Council and the Board consistently

2   opposed the Tribe's proposed Project.  For example, in 2019, both the Redding City Council and

3   the Board sent letters to the BIA expressing their disapproval of the Project.  The Board's letter

4   expressed its concern that the Project would have a "detrimental impact on the Shasta County

5   community that cannot be adequately mitigated."

6   **B.     The Board Reverses Course.**

7   24.     Between January 2021 and January 2023, four of the Board's five Supervisors were

8   replaced.  In or around early 2023, one or more Supervisors began negotiating the terms of the

9   proposed Agreement with the Tribe.  The fifth Supervisor—who had historically opposed the

10  Project—was excluded from the negotiations, as were the County's staff and its Sheriff, Fire Chief,

11  Counsel, and Risk Manager.

12  25.     On June 30, 2023, the Tribe presented the Board with the proposed Agreement,

13  which the Board later approved, as amended, and then executed on behalf of the County.  Pursuant

14  to Section 5(B) of the Agreement, it is to remain effective for a period of approximately 30 years,

15  unless the Tribe permanently ceases gaming at the Project sooner.

16  26.     Section 2(A)-(C) of the Agreement provides that the Tribe is to "make non-recurring

17  (one-time) payments" to mitigate the Project's impacts to County services, including law

18  enforcement, fire, and emergency services.  Section 2(D) also requires the Tribe to make a one-

19  time payment to mitigate the Project's impacts on County roads in accordance with the federal

20  Environmental Impact Statement and Record of Decision for the Project.

21  27.     Section 3 of the Agreement requires the Tribe to make certain "recurring" payments

22  purportedly to: (i) mitigate the Project's impacts to law enforcement, fire, and emergency services,

23  based on the number of calls received for such services per year; and (ii) ensure the County roads

24  and traffic controls are "secured and maintained by the County for commercial and business traffic"

25  for the Project.  Section 4 further provides that the recurring payments to the County are to be made

26  annually.  Unlike the other intergovernmental agreements identified by County staff, none of the

27  recurring payments required under the Agreement would be adjusted for inflation.

28

VERIFIED PETITION AND COMPLAINT

1    **C.    The Board Votes to Approve the Agreement.**

2        28.    At its meeting of July 25, 2023, the Board received comments, and ultimately voted,

3    on the proposed Agreement.  The proposed Agreement was widely opposed.

4        29.    Pursuant to the Board's direction, County staff analyzed, on an expedited schedule,

5    the impacts of the proposed Agreement.  The Staff Report acknowledged that the intent of the

6    Agreement is to "mitigate the County costs related to the new casino for providing law enforcement,

7    fire and emergency services, and costs to maintain County roads and traffic controls and related

8    costs."  However, the Staff Report concluded the Agreement "would not fully mitigate the

9    anticipated costs" to the County for providing those services. Accordingly, County staff

10   recommended that the Board delay approving the proposed Agreement, to allow staff time to

11   sufficiently analyze its impacts and negotiate revisions to its terms based upon that review.

12       30.    Using the figures presented by County staff, the below table highlights the

13   differences between the recurring and non-recurring payments the County would receive under the

14   proposed Agreement and those received by other local governments.  A row in the table adjusts the

15   one-time payments for inflation[1] to show their present value relative to the one-time payments to

16   the County under the Agreement:

| California Intergovernmental Agreement Comparison | | | | |
|---|---|---|---|---|
| Agreement | Shasta County Redding Rancheria (Proposed) | Sonoma County Graton Rancheria (2012) | City of Rohnert Park Graton Rancheria (2013) | Yuba County Enterprise Rancheria (2002) |
| Acres | 232 | 254 | 254 | 40 |
| Square Feet | 69,500 | 65,000 | 65,000 | 91,000 |
| # of Machines | 1,200 | 3,000 | 3,000 | 2,100 |
| # of Rooms | 250 | 200 | 200 | 170 |
| One-Time Payments (not adjusted for inflation) | $3,600,000 | $5,100,000 | $9,700,000 | $1,900,000 |
| Inflation Adjusted One-Time Payments | $3,600,000 | $6,799,875 | $12,852,199 | $3,239,316 |
| Recurring Payments (per annum) (not adjusted for inflation) | $50,000 | $12,200,000 | $12,000,000 | $5,000,000 |
| 30 Year Recurring Payment Total (not adjusted for inflation) | $1,500,000 | $366,000,000 | $360,000,000 | $150,000,000 |
| 30 Year Recurring Payment Total Per Square Foot (PSF) (not adjusted for inflation) | $22 | $5,631 | $5,538 | $1,648 |

---

[1] U.S. Bureau of Labor Statistics, CPI Inflation Calculator, https://www.bls.gov/data/inflation_calculator.htm (last accessed February 13, 2024.)

- 8 -

VERIFIED PETITION AND COMPLAINT

Below is a graph that simplifies some of the above information:



**30 Year Recurring Payment Total**
**(not adjusted for inflation)**

31.     As noted, the County Sheriff and Fire Chief opposed the proposed Agreement, expressing concerns about impacts to their departments and that the payments called for by the proposed Agreement would not be nearly enough to cover the cost of providing law enforcement, fire, and emergency services for the Project.

32.     The Sheriff explained that, although the Agreement requires the Tribe to pay the County a $1,000 per call recurring payment for law enforcement services, the Tribe is not required to compensate the County for any investigation that follows. The Sheriff estimated an investigation of a major crime could easily cost in the range of $10,000 to $20,000—somewhere between a 900 percent and 1,900 percent underestimation for such services. Nor does the $1,000 payment take into account crimes committed at the Project site but reported from off-site. Nor does it take into account proactive patrols taking place at the Project site. Nor does it take into account cost impacts to related local law enforcement agencies, including the District Attorney's Office, Public Defender's Office, Probation Department, courts, local police departments, and the local jail. The

VERIFIED PETITION AND COMPLAINT

1   Sheriff concluded his remarks by stating the following: "hastily passing an Agreement like this is
2   fiscally irresponsible to the citizens and long term viability of this County."
3       33.   The Fire Chief explained that the Tribe's $1 million non-recurring payment would
4   not be sufficient to cover the $2.5 to $3 million cost to purchase a new ladder firetruck, which
5   would be a necessary expense to respond to calls for the Project considering the planned 9-story
6   hotel.  This represents an underestimation of somewhere between 150 percent and 200 percent.
7   Likewise, the Tribe's $10,000 per call recurring payment would not be sufficient to cover either
8   the: (i) annual $2.5 million in costs necessary to staff that fire truck to respond to calls at the Project
9   site; or (ii) cost to respond to a major emergency requiring significant resources (e.g., large fire,
10  multiple trucks).
11      34.   The District Attorney for the City of Redding also opposed the Agreement and
12  expressed concerns over the negotiation process, as well as the potential impacts to her department.
13  She stated it was important to "get some real numbers" to ensure the safety of the community.
14      35.   One Supervisor stated that she could not support an agreement that has not been
15  approved by County Counsel and County Risk Management.  She stated the Board had received a
16  "scathing report" on the proposed Agreement from the County's outside legal counsel, which noted
17  several issues with the Agreement.
18      36.   The County Counsel informed the Board that his office had not reviewed the
19  proposed Agreement, despite the Contracts Manual's requirement that the County Counsel and
20  Risk Manager review any non-standard contract before the County enters into it.  The Board
21  nevertheless purported to vote to "waive" the requirement—which had also been set forth in the
22  proposed Agreement itself (Section 5(A)(ii)).
23      37.   The Board ultimately voted 4-1 to approve the Agreement, as amended.  The County
24  was undeterred by the knowledge that: (i) the Agreement would result in the County having to
25  expend funds to provide services for the Project far in excess of the payments it would receive from
26  the Tribe; and (ii) entering into the Agreement would violate its own Policy.
27
28

VERIFIED PETITION AND COMPLAINT

1    38.    The Board's approval of the Agreement and decision to enter into the Agreement on

2  behalf of the County was unlawful and constitutes an illegal and wasteful expenditure of public

3  funds.

4                              **FIRST CAUSE OF ACTION**

5                    **(Petition for Writ of Mandate – Code Civ. Proc. § 1085)**

6    39.    Petitioner hereby incorporates each paragraph set forth above.

7    40.    The County's Contracts Manual, Policy No. 6-101, requires non-standard contracts

8  to be reviewed and approved as to form by the County Counsel and reviewed and approved by the

9  County's Risk Manager before they are entered into by the County.  The Policy does not permit the

10  County or its Board to waive this requirement.   The Board unlawfully purported to waive this

11  requirement, and then approved and entered into the Agreement on behalf of the County.   The

12  Board did so without first adopting a formal resolution as required to amend the County's Policy

13  to authorize such a waiver.  In addition to violating the Contract Manual, the decision to approve

14  the Agreement is devoid of any evidentiary support.

15    41.    Petitioner seeks a writ directing Respondents to set aside the approval of the

16  Agreement because the Board failed to comply with its ministerial and other legal duties (e.g., not

17  commit waste) and also acted in a manner that is arbitrary, capricious and an abuse of discretion.

18  No other plain, speedy and adequate legal remedy exists.

19                            **SECOND CAUSE OF ACTION**

20          **(Taxpayer Action for Illegal and Wasteful Expenditure - Code Civ. Proc. § 526a)**

21    42.    Petitioner hereby incorporates each paragraph set forth above.

22    43.    The Board's decision to enter into the Agreement on behalf of the County constitutes

23  an illegal act, waste of, and/or injury to, the County's funds and/or property.  The Board recklessly

24  committed the County to provide services to a casino on Tribal land for a 30-year term without any

25  benefit to the public.  In effect, the Board gifted tens of millions of dollars of public funds to the

26  Tribe.  The Board claimed the goal of the payments under the Agreement was to mitigate the

27  negative impacts of the casino but the evidence at trial will show the payments would not come

28

VERIFIED PETITION AND COMPLAINT

1   close to achieving that goal.  The Board's decision was intentional and the product of a "backroom

2   deal" that elevated the interests of the Tribe over those of the County.

3                                           **PRAYER FOR RELIEF**

4           Wherefore, Petitioner prays that the Court issue the following relief:

5           1.      A declaration to the effect that the Board's approval of the Agreement was contrary

6   to law.

7           2.      A writ directing the Board to set aside and/or rescind its decision to approve and

8   enter into the Agreement on behalf of the County.

9           3.      A permanent injunction prohibiting Respondents from taking acts, spending public

10  funds, or using public resources in furtherance of the Agreement.

11          4.      An award of Petitioner's reasonable fees and costs, including under Code of Civil

12  Procedure section 1021.5.

13          5.      For such other and further relief as the Court deems just and proper.

14                                         **DEMAND FOR JURY TRIAL**

15          Petitioner hereby demands trial by jury.

16                  Respectfully submitted,

17

18  DATED:  February 13, 2024                      PAUL HASTINGS LLP

19

20                                          By: _____
                                                NAVI SINGH DHILLON

21
                                            Attorneys for Petitioner and Plaintiff
22                                          CALIFORNIA LAND STEWARDSHIP
                                            COUNCIL LLC

23

24

25

26

27

28

                                                  - 12 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**VERIFICATION**

As authorized by Code of Civil Procedure section 446, subdivision (a), because my office is not located in the County in which Petitioner and Plaintiff California Land Stewardship Council LLC is headquartered, I, Dylan J. Crosby, submit this verification. I have read this Verified Petition for Writ of Mandate and Complaint and am informed and believe that the matters therein are true, and on that ground allege that the matters stated therein are true.

Executed at San Francisco, California on February 13, 2024.

_____

DYLAN J. CROSBY

- 13 -

VERIFIED PETITION AND COMPLAINT

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
County of Shasta, Shasta County Board of Supervisors

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
California Land Stewardship Council LLC

<div style="border:1px solid">

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*



**FILED**

FEB 13 2024

SHASTA COUNTY SUPERIOR COURT
BY: A. WADDLE, DEPUTY CLERK

</div>

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>Shasta County Superior Court, 1500 Court Street, Redding, CA 96001 | CASE NUMBER:<br>*(Número del Caso):*<br>204273 |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Navi Singh Dhillon; Paul Hastings LLP, 101 California Street, 48th Floor, San Francisco, CA 94111; Ph: 415-856-7000

| DATE:<br>*(Fecha)* FEB 13 2024 | Clerk, by<br>*(Secretario)* A. Waddle | , Deputy<br>*(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario  Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☐ on behalf of *(specify):*

    under: ☐ CCP 416.10 (corporation)         ☐ CCP 416.60 (minor)
    ☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
    ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
    ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courts.ca.gov

By Fax

NAVI SINGH DHILLON (SBN 279537)
navidhillon@paulhastings.com
CHRISTOPHER J. CARR (SBN 184076)
chriscarr@paulhastings.com
DYLAN J. CROSBY (SBN 299536)
dylancrosby@paulhastings.com
LUCAS V. GRUNBAUM (SBN 314180)
lucasgrunbaum@paulhastings.com
PAUL HASTINGS LLP
101 California Street, 48th Floor
San Francisco, California 94111
Telephone:  (415) 856-7000

Attorneys for Petitioner and Plaintiff
CALIFORNIA LAND STEWARDSHIP
COUNCIL LLC

FILED

FEB 27 2024 🅟

SHASTA COUNTY SUPERIOR COURT
BY: M. PARTRIDGE, DEPUTY CLERK

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SHASTA

| CALIFORNIA LAND STEWARDSHIP COUNCIL LLC, | Case No. 204273 |
|---|---|
| Petitioner and Plaintiff, | **FIRST AMENDED VERIFIED PETITION FOR WRIT OF MANDATE AND COMPLAINT** |
| v. | UNLIMITED JURISDICTION |
| COUNTY OF SHASTA and its BOARD OF SUPERVISORS, | |
| Respondents and Defendants. | |

By Fax

- 1 -

FIRST AMENDED VERIFIED PETITION AND COMPLAINT

1.     Petitioner and Plaintiff California Land Stewardship Council LLC (Petitioner) brings this civil action against Respondents County of Shasta (County) and its Board of Supervisors (Board), and alleges as follows:

**THE CONTROVERSY**

2.     Over the objection of the County Fire Chief, the County Sheriff, and the County's own lawyers and staff, the Board gave away millions of dollars of public funds via an agreement with the developer of a casino. More specifically, the dispute concerns the Board's July 25, 2023, unlawful approval of an "Intergovernmental Agreement" (Agreement) between the County and the Redding Rancheria, a federally recognized Indian tribe (Tribe). The Tribe seeks to relocate its existing casino to a nearby undeveloped 232-acre parcel of land on the banks of the Sacramento River, known as "Strawberry Fields." There, the Tribe wants to build a new 1,123,272 square foot gaming complex (Project), which includes a 9-story hotel that, according to the County Fire Chief, would be the tallest building between Sacramento, California and Portland, Oregon.

3.     The Agreement commits the County to provide services for the Project for a period of up to 30 years, including law enforcement, fire, and other emergency services. In exchange, the Tribe is required to make certain "non-recurring" (or one-time) and "recurring" payments to the County. The claimed purpose of those payments is to mitigate the Project's impacts related to providing County services, and other fiscal impacts relating to traffic and roads. However, the Board did not disclose or perform any cost-benefit or other analysis to determine whether the payments called for by the Agreement were actually sufficient to compensate the County. In fact, the payments are grossly insufficient by any measure. What's more, the Board disregarded a "scathing" report about the Agreement prepared by the County's own outside counsel.

4.     The Tribe has been attempting to obtain the necessary governmental approvals to relocate its casino, including from the federal Bureau of Indian Affairs (BIA) and the California Senate. The Board has historically opposed the Project, given its potential to cause significant impacts to the community. For example, in an October 2019 letter to the BIA, the Board expressed its concern that the Project would have a "detrimental impact on the Shasta County community that cannot be adequately mitigated."

- 2 -

5.      By January 2023, four of the five Supervisors who had opposed the Project had been replaced. In early 2023, the Tribe and one or more Supervisors began negotiating the terms of the Agreement in earnest. The one remaining Supervisor who had voted against the Project in 2019 and 2022 was, in her own words, kept "in the dark" as to the negotiations. Likewise, the County Counsel, Risk Manager, Sheriff, and Fire Chief were not kept apprised of the negotiations.

6.      At the July 25, 2023, meeting, County staff and public safety department heads made formal presentations to the Board opposing the proposed Agreement. County staff recommended that the Board delay approving the Agreement to allow staff more time to analyze the Project's potential impacts. Staff presented to the Board the below table, comparing (without adjusting for inflation) the drastic differences between the recurring and non-recurring payments the County would receive under the proposed Agreement and those received by other local governments in connection with similar agreements for similar sized projects.

| California Intergovernmental Agreement Comparison | | | | | | |
|---|---|---|---|---|---|---|
| Agreement: | Shasta County Redding Rancheria (Proposed) | Sonoma County Graton Rancheria (2012) | City of Rohnert Park Graton Rancheria (2013) | Madera County North Fork Rancheria (2004) | City of Madera North Fork Rancheria (2006) | Yuba County Enterprise Rancheria (2002) |
| Acres | 232 | 254 | 254 | 305 | 305 | 40 |
| Square Feet | 69,500 | 65,000 | 65,000 | 68,150 | 68,150 | 91,000 |
| # of Machines | 1,200 | 3,000 | 3,000 | 2,000 | 2,000 | 2,100 |
| # of Rooms | 250 | 200 | 200 | 200 | 200 | 170 |
| One-Time Payments | $3.6M | $5.1M | $9.7M | $6.9-17.9M | $6.3M-10.3M | $1.9M |
| Recurring Payments | $50k | $12.2M | $12.0M | $4.0M | $1.1M | $5.0M |

Staff explained that the "Agreement would not fully mitigate the anticipated costs related to the new Casino for providing law enforcement, fire emergency services, and the costs to maintain the County roads and traffic controls." Consistent with the concerns of staff, the Sheriff and Fire Chief also opposed the proposed Agreement.

7.      The Sheriff informed the Board that the payments would be insufficient to cover the cost to the County related to providing law enforcement services. He stated: "I am charged with looking out for the public safety of this County, and that's why I am up here urging you and pleading with you that you defer your decision on this Agreement and give us a chance to go back to the table and negotiate with the Tribe and hopefully come up with a more equitable agreement." The Fire Chief reached the same conclusion: "Just like the Sheriff, I am proposing to you to make

-3-

FIRST AMENDED VERIFIED PETITION AND COMPLAINT

1    sure that all the information that you guys have is accurate in a timely manner and you have all the

2    fact[s] behind what, how that's going to impact, not only my shop but the Sheriff's shop and

3    everybody else. . . . And I obviously don't have the tools right now as your fire chief in order to

4    mitigate a significant event at that casino."

5          8.      The County Counsel warned the Board that his office had not yet reviewed the

6    Agreement. Nor had the County's Risk Manager reviewed it. Shasta County Contracts Manual,

7    Administrative Policy 6-101 (Contracts Manual or Policy), requires non-standard contracts, such

8    as the proposed Agreement, to be reviewed and approved as to form by the County Counsel and

9    reviewed and approved by the County's Risk Manager.

10         9.      Undeterred and against the recommendation of County Counsel, the Board

11   purported to vote to waive the Policy's requirements, without first taking any formal action to

12   amend the Policy to authorize such a waiver. It then voted to approve the Agreement, as amended

13   to remove the requirement that it "be approved as to form by the County Counsel." The lone

14   Supervisor that voted against the Agreement noted it reflected "poor judgment" to ignore the advice

15   of County Counsel.

16         10.     The Agreement is illegal. The Board ignored its own procedures for approving

17   contracts. But that is not all. For example, Supervisor Crye acknowledged the Agreement smacked

18   of "corruption" or "total incompetence." Supervisor Crye further conceded the process was

19   "egregious." Yet Crye remarkably still voted in favor of the Tribe. This is highly improper.

20         11.     The Board also made its decision without disclosing sufficient evidence at any

21   public meeting, recklessly committing the County to a 30-year term. Indeed, the Tribe claims it

22   presented evidence to certain County officials but that claimed evidence was not disclosed to the

23   public during the meeting on the Agreement. The financial terms of the Agreement harm the

24   County and constitute a waste of public funds. In short, the Board failed to comply with its legal

25   duties and prompt judicial intervention is needed to protect the County from this "backroom deal."

26                                      **THE PARTIES**

27         12.     Petitioner seeks to promote responsible government and advance the interests of its

28   members. Petitioner's members include residents of the County who have either: (i) been assessed

- 4 -

1   and are liable for a tax that funds the County; or (ii) within one year before the commencement of

2   this action, paid a tax that funds the County.  Petitioner's members are concerned with the negative

3   impacts to the County and its residents that will result from the Board's unlawful approval of the

4   Agreement.  Accordingly, Petitioner has a beneficial interest in the issuance of a writ within the

5   meaning of Code of Civil Procedure section 1086.

6          13.    Respondent County is a political subdivision of the State of California.  Respondent

7   Board is the local governing body for the County.

8                                      **JURISDICTION AND VENUE**

9          14.    This Court has jurisdiction over the subject matter of this action under Code of Civil

10   Procedure, sections 526a and 1085.

11          15.    Venue is proper in this Court because this action involves a challenge to the Board's

12   unlawful approval of the Agreement.  (Code Civ. Prov. § 394, subd. (a).)

13          16.    The Board approved the Agreement on July 25, 2023.  That decision is final and the

14   underlying administrative process is complete.  Accordingly, any exhaustion requirement has been

15   met or is excused due to futility.

16       **THE LAW:  COUNTY CONTRACTS MANUAL AND PROHIBITION AGAINST**

17                                         **WASTE**

18       **A.**     **Shasta County Contracts Manual, Policy 6-101.**

19          17.    The Contracts Manual establishes policies and procedures for the County to enter

20   into agreements or contracts.  The Board formally adopted the Contracts Manual as Policy No. 6-

21   101.  The Contracts Manual has been amended by the Board on numerous occasions via Policy

22   Resolutions.

23          18.    Section 1.3 of the Contracts Manual "describes the responsibilities and procedures

24   that apply generally to contracts," including the "responsibility for obtaining the best terms" for the

25   County (§ 1.3.4), and the requirement that all County contracts be reviewed and approved by the

26   County Counsel and the County's Risk Manager (§ 1.3.3).  Section 1.3.3 of the Contracts Manual

27   provides, in relevant part, that:

28

-5-

1     With the exception of certain pre-approved standard contracts and other specified
2     low-risk contracts identified in this Manual (see e.g., Section 5.6), all contracts must
    be reviewed and signed for approval as to form by County Counsel.

3     [¶]

4     The Risk Manager . . . must approve and sign all County contracts except those
5     standard format contracts which department heads or the CEO can independently
    sign.
6

7       19.     The Contracts Manual does not permit the Board to waive compliance with these

8 requirements.

9      **B.**     **Taxpayer Actions under Section 526a.**

10       20.     Code of Civil Procedure, section 526a permits a taxpayer to bring an action to

11 restrain or prevent an "illegal" or "wasteful" expenditure of public money. "No showing of special

12 damage to a particular taxpayer is required as a requisite for bringing a taxpayer suit." (*Connerly*

13 *v. State Personnel Bd.* (2001) 92 Cal.App.4th 16, 29.) California courts recognize the importance

14 of taxpayer suits to ensure government accountability: "'[T]he individual citizen must be able to

15 take the initiative through taxpayers' suits to keep government accountable on the state as well as

16 on the local level." (*Vasquez v. Cal.* (2003) 105 Cal.App.4th 849, 854.)

17       21.     California courts broadly and liberally construe Section 526a to promote its remedial

18 purpose. (See *Blair v. Pitchess* (1971) 5 Cal.3d 258, 267-68.) In that connection, taxpayer actions

19 are permitted for both "actual or threatened expenditures of public funds." (*Waste Mgmt. of*

20 *Alameda Cnty., Inc. v. Cnty. of Alameda* (2000) 79 Cal.App.4th 1223, 1240, disapproved on other

21 grounds.) Taxpayer actions may be used to challenge an agency's decision to enter into an illegal

22 contract. (See, e.g., *Miller v. McKinnon* (1942) 20 Cal.2d 83, 89; *A.J. Fistes Corp. v. GDL Best*

23 *Contractors, Inc.* (2019) 38 Cal.App.5th 677, 689.) An injunction preventing the illegal or wasteful

24 expenditure of funds is explicitly authorized. (Code Civ. Proc. § 526a, subd. (a).)

25                 **FACTUAL BACKGROUND**

26      **A.**     **The Tribe's Proposed Project and the County's Historic Opposition.**

27       22.     The Tribe currently conducts gaming activities at its existing Win-River Casino

28 located just off Interstate 5 in Redding, California. The Tribe seeks the County's assistance in

FIRST AMENDED VERIFIED PETITION AND COMPLAINT

1   relocating its existing casino 1.6 miles northeast to the Strawberry Fields property. The Tribe plans

2   to construct a massive 1,123,272 square foot gaming complex at Strawberry Fields, including a

3   69,541 square foot casino, a 52,000 square foot event center, and a 9-story, 250-room hotel.

4        23.   In 2003, the Tribe submitted a "fee-to-trust" application to the BIA to relocate its

5   gaming facility from its existing location to Strawberry Fields. The BIA denied the Tribe's request.

6   In 2016, the Tribe re-submitted its request to the BIA, which agreed to take the Tribe's request

7   under consideration to give the Tribe time to prove the Project "would not be detrimental to the

8   surrounding community." (25 U.S.C. § 2719(a).)

9        24.   Between 2016 and 2022, the Redding City Council and the Board consistently

10   opposed the Tribe's proposed Project. For example, in 2019, both the Redding City Council and

11   the Board sent letters to the BIA expressing their disapproval of the Project. The Board's letter

12   expressed its concern that the Project would have a "detrimental impact on the Shasta County

13   community that cannot be adequately mitigated."

14   **B.**    **The Board Reverses Course.**

15        25.   Between January 2021 and January 2023, four of the Board's five Supervisors were

16   replaced. In or around early 2023, one or more Supervisors renewed negotiations regarding the

17   terms of the proposed Agreement with the Tribe. The fifth Supervisor—who had historically

18   opposed the Project—was excluded from the negotiations, as were the County's staff and its

19   Sheriff, Fire Chief, Counsel, and Risk Manager.

20        26.   On June 30, 2023, the Tribe presented the Board with the proposed Agreement,

21   which the Board later approved, as amended, and then executed on behalf of the County. Pursuant

22   to Section 5(B) of the Agreement, it is to remain effective for a period of approximately 30 years,

23   unless the Tribe permanently ceases gaming at the Project sooner.

24        27.   Section 2(A)-(C) of the Agreement provides that the Tribe is to "make non-recurring

25   (one-time) payments" to mitigate the Project's impacts to County services, including law

26   enforcement, fire, and emergency services. Section 2(D) also requires the Tribe to make a one-

27   time payment to mitigate the Project's impacts on County roads in accordance with the federal

28   Environmental Impact Statement and Record of Decision for the Project.

FIRST AMENDED VERIFIED PETITION AND COMPLAINT

1        28.     Section 3 of the Agreement requires the Tribe to make certain "recurring" payments

2  purportedly to: (i) mitigate the Project's impacts to law enforcement, fire, and emergency services,

3  based on the number of calls received for such services per year; and (ii) ensure the County roads

4  and traffic controls are "secured and maintained by the County for commercial and business traffic"

5  for the Project.  Section 4 further provides that the recurring payments to the County are to be made

6  annually.  Unlike the other intergovernmental agreements identified by County staff, none of the

7  recurring payments required under the Agreement would be adjusted for inflation.

8       **C.**     **The Board Votes to Approve the Agreement.**

9        29.     At its meeting of July 25, 2023, the Board received comments, and ultimately voted,

10  on the proposed Agreement.  The proposed Agreement was widely opposed.

11        30.     Pursuant to the Board's direction, County staff analyzed, on an expedited schedule,

12  the impacts of the proposed Agreement.  The Staff Report acknowledged that the intent of the

13  Agreement is to "mitigate the County costs related to the new casino for providing law enforcement,

14  fire and emergency services, and costs to maintain County roads and traffic controls and related

15  costs."  However, the Staff Report concluded the Agreement "would not fully mitigate the

16  anticipated costs" to the County for providing those services.  Accordingly, County staff

17  recommended that the Board delay approving the proposed Agreement, to allow staff time to

18  sufficiently analyze its impacts and negotiate revisions to its terms based upon that review.

19        31.     Using the figures presented by County staff, the below table highlights the

20  differences between the recurring and non-recurring payments the County would receive under the

21  proposed Agreement and those received by other local governments.  A row in the table adjusts the

22  one-time payments for inflation[1] to show their present value relative to the one-time payments to

23  the County under the Agreement:

24

25

26

27

---

28  [1] U.S. Bureau of Labor Statistics, CPI Inflation Calculator, https://www.bls.gov/data/inflation_calculator.htm (last accessed February 13, 2024.)

FIRST AMENDED VERIFIED PETITION AND COMPLAINT

| California Intergovernmental Agreement Comparison | | | | |
|---|---|---|---|---|
| Agreement | Shasta County Redding Rancheria (Proposed) | Sonoma County Graton Rancheria (2012) | City of Rohnert Park Graton Rancheria (2013) | Yuba County Enterprise Rancheria (2002) |
| Acres | 232 | 254 | 254 | 40 |
| Square Feet | 69,500 | 65,000 | 65,000 | 91,000 |
| # of Machines | 1,200 | 3,000 | 3,000 | 2,100 |
| # of Rooms | 250 | 200 | 200 | 170 |
| One-Time Payments (not adjusted for inflation) | $3,600,000 | $5,100,000 | $9,700,000 | $1,900,000 |
| Inflation Adjusted One-Time Payments | $3,600,000 | $6,799,875 | $12,852,199 | $3,239,316 |
| Recurring Payments (per annum) (not adjusted for inflation) | $50,000 | $12,200,000 | $12,000,000 | $5,000,000 |
| 30 Year Recurring Payment Total (not adjusted for inflation) | $1,500,000 | $366,000,000 | $360,000,000 | $150,000,000 |
| 30 Year Recurring Payment Total Per Square Foot (PSF) (not adjusted for inflation) | $22 | $5,631 | $5,538 | $1,648 |

Below is a graph that simplifies some of the above information:



32.   As noted, the County Sheriff and Fire Chief opposed the proposed Agreement, expressing concerns about impacts to their departments and that the payments called for by the

- 9 -

FIRST AMENDED VERIFIED PETITION AND COMPLAINT

1  proposed Agreement would not be nearly enough to cover the cost of providing law enforcement,

2  fire, and emergency services for the Project.

3      33.    The Sheriff explained that, although the Agreement requires the Tribe to pay the

4  County a $1,000 per call recurring payment for law enforcement services, the Tribe is not required

5  to compensate the County for any investigation that follows.  The Sheriff estimated an investigation

6  of a major crime could easily cost in the range of $10,000 to $20,000—somewhere between a 900

7  percent and 1,900 percent underestimation for such services.  Nor does the $1,000 payment take

8  into account crimes committed at the Project site but reported from off-site.  Nor does it take into

9  account proactive patrols taking place at the Project site.  Nor does it take into account cost impacts

10 to related local law enforcement agencies, including the District Attorney's Office, Public

11 Defender's Office, Probation Department, courts, local police departments, and the local jail.  The

12 Sheriff concluded his remarks by stating the following:  "hastily passing an Agreement like this is

13 fiscally irresponsible to the citizens and long term viability of this County."

14     34.    The Fire Chief explained that the Tribe's $1 million non-recurring payment would

15 not be sufficient to cover the $2.5 to $3 million cost to purchase a new ladder firetruck, which

16 would be a necessary expense to respond to calls for the Project considering the planned 9-story

17 hotel.  This represents an underestimation of somewhere between 150 percent and 200 percent.

18 Likewise, the Tribe's $10,000 per call recurring payment would not be sufficient to cover either

19 the: (i) annual $2.5 million in costs necessary to staff that fire truck to respond to calls at the Project

20 site; or (ii) cost to respond to a major emergency requiring significant resources (e.g., large fire,

21 multiple trucks).

22     35.    The District Attorney for the City of Redding also opposed the Agreement and

23 expressed concerns over the negotiation process, as well as the potential impacts to her department.

24 She stated it was important to "get some real numbers" to ensure the safety of the community.

25     36.    One Supervisor stated that she could not support an agreement that has not been

26 approved by County Counsel and County Risk Management.  She stated the Board had received a

27 "scathing report" on the proposed Agreement from the County's long-time outside legal counsel

28 that had previously worked on similar intergovernmental agreements.  She explained that the report

1   noted "several issues" with the proposed Agreement and that, in her opinion, going against the

2   advice of outside counsel and County Counsel reflected "poor judgment."

3       37.     The County Counsel informed the Board that his office had not reviewed the

4   proposed Agreement, despite the Contracts Manual's requirement that the County Counsel and

5   Risk Manager review any non-standard contract before the County enters into it.   The Board

6   nevertheless purported to vote to "waive" the requirement against the recommendation of County

7   Counsel—which had also been set forth in the proposed Agreement itself (Section 5(A)(ii)).

8       38.     The Board ultimately voted 4-1 to approve the Agreement, as amended.   The Board

9   was undeterred by the knowledge that: (i) the Agreement would result in the County having to

10  expend funds to provide services for the Project far in excess of the payments it would receive from

11  the Tribe; and (ii) entering into the Agreement would violate its own Policy.

12      39.     The Board's approval of the Agreement and decision to enter into the Agreement on

13  behalf of the County was unlawful and constitutes an illegal and wasteful expenditure of public

14  funds.

15                          **FIRST CAUSE OF ACTION**

16              **(Petition for Writ of Mandate – Code Civ. Proc. § 1085)**

17      40.     Petitioner hereby incorporates each paragraph set forth above.

18      41.     The County's Contracts Manual, Policy No. 6-101, requires non-standard contracts

19  to be reviewed and approved as to form by the County Counsel and reviewed and approved by the

20  County's Risk Manager before they are entered into by the County.   The Policy does not permit the

21  County or its Board to waive this requirement.   The Board unlawfully purported to waive this

22  requirement, and then approved and entered into the Agreement on behalf of the County.   The

23  Board did so without first adopting a formal resolution as required to amend the County's Policy

24  to authorize such a waiver.   In addition to violating the Contract Manual, the decision to approve

25  the Agreement is devoid of any evidentiary support.

26      42.     Petitioner seeks a writ directing Respondents to set aside the approval of the

27  Agreement because the Board failed to comply with its ministerial and other legal duties (e.g., not

28

- 11 -

FIRST AMENDED VERIFIED PETITION AND COMPLAINT

1   commit waste) and also acted in a manner that is arbitrary, capricious and an abuse of discretion.

2   No other plain, speedy and adequate legal remedy exists.

3                          **SECOND CAUSE OF ACTION**

4   **(Taxpayer Action for Illegal and Wasteful Expenditure - Code Civ. Proc. § 526a)**

5          43.    Petitioner hereby incorporates each paragraph set forth above.

6          44.    The Board's decision to enter into the Agreement on behalf of the County constitutes

7   an illegal act, waste of, and/or injury to, the County's funds and/or property.  The Board recklessly

8   committed the County to provide services to a casino on Tribal land for a 30-year term without any

9   benefit to the public.  In effect, the Board gifted tens of millions of dollars of public funds to the

10  Tribe.  The Board claimed the goal of the payments under the Agreement was to mitigate the

11  negative impacts of the casino but the evidence at trial will show the payments would not come

12  close to achieving that goal.  The Board's decision was intentional and the product of a "backroom

13  deal" that elevated the interests of the Tribe over those of the County.

14                          **PRAYER FOR RELIEF**

15         Wherefore, Petitioner prays that the Court issue the following relief:

16         1.     A declaration to the effect that the Board's approval of the Agreement was contrary

17  to law.

18         2.     A writ directing the Board to set aside and/or rescind its decision to approve and

19  enter into the Agreement on behalf of the County.

20         3.     A permanent injunction prohibiting Respondents from taking acts, spending public

21  funds, or using public resources in furtherance of the Agreement.

22         4.     An award of Petitioner's reasonable fees and costs, including under Code of Civil

23  Procedure section 1021.5.

24         5.     For such other and further relief as the Court deems just and proper.

25                          **DEMAND FOR JURY TRIAL**

26         Petitioner hereby demands trial by jury.

27                 Respectfully submitted,

28

- 12 -

FIRST AMENDED VERIFIED PETITION AND COMPLAINT

1   DATED: February 27, 2024                 PAUL HASTINGS LLP

2

3                                            By: _____

4                                           NAVI SINGH DHILLON

5                                           Attorneys for Petitioner and Plaintiff
                                            CALIFORNIA LAND STEWARDSHIP

6                                             COUNCIL LLC

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 13 -

FIRST AMENDED VERIFIED PETITION AND COMPLAINT

1

**VERIFICATION**

2          As authorized by Code of Civil Procedure section 446, subdivision (a), because my office

3  is not located in the County in which Petitioner and Plaintiff California Land Stewardship

4  Council LLC is headquartered, I, Dylan J. Crosby, submit this verification.  I have read this First

5  Amended Verified Petition for Writ of Mandate and Complaint and am informed and believe that

6  the matters therein are true, and on that ground allege that the matters stated therein are true.

7          Executed at San Francisco, California on February 27, 2024.

8

9                                                            DYLAN J. CROSBY

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED VERIFIED PETITION AND COMPLAINT

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*<br>Navi Singh Dhillon | SBN: 279537<br>PAUL HASTINGS LLP<br>101 California St 48th Floor  San Francisco, CA 94105<br><br>TELEPHONE NO.: (415) 856-7000 | FAX NO. (415) 856-7100 | E-MAIL ADDRESS<br>ATTORNEY FOR *(Name):* Petitioner and Plaintiff: CALIFORNIA LAND STEWARDSHIP COUNCIL LLC | *FOR COURT USE ONLY*<br><br>**FILED**<br>MAR - 4 2024<br>SHASTA COUNTY SUPERIOR COURT<br>BY: M. PARTRIDGE, DEPUTY CLERK<br><br>By Fax |
|---|---|
| **SHASTA COUNTY SUPERIOR COURT**<br>STREET ADDRESS: 1500 COURT ST<br>CITY AND ZIP CODE: REDDING, CA 96001<br>BRANCH NAME: | |
| PLAINTIFF/PETITIONER: CALIFORNIA LAND STEWARDSHIP COUNCIL LLC<br>DEFENDANT/RESPONDENT: COUNTY OF SHASTA and its BOARD OF SUPERVISORS | CASE NUMBER:<br>204273 |
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.:<br>52864-00001 |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:
   a. ☑ Summons
   b. ☑ Complaint
   c. ☐ Alternative Dispute Resolution (ADR) package
   d. ☑ Civil Case Cover Sheet
   e. ☐ Cross-Complaint
   f. ☑ other *(specify documents):* **FIRST AMENDED VERIFIED PETITION FOR WRIT OF MANDATE AND COMPLAINT**
3. a.  Party served *(specify name of party as shown on documents served):*
   **County of Shasta**

   b. ☑ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*
   **Kristin Gulling-Smith - Staff Services Analyst**
4. Address where the party was served:  **1450 Court St**
   **Redding, CA 96001-1683**
5. I served the party *(check proper box)*
   a. ☑ **by personal service.**  I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date):* 2/29/2024   (2) at *(time):* 1:42 PM

   b. ☐ **by substituted service.** On *(date):*   at *(time):*   I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3):*

      (1) ☐ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served.  I informed him or her of the general nature of the papers.

      (2) ☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party.  I informed him or her of the general nature of the papers.

      (3) ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box.  I informed him or her of the general nature of the papers.

      (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., §415.20). I mailed the documents on *(date):*  from *(city):*   **or** ☐ a declaration of mailing is attached.

      (5) ☐ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

| Form Approved for Mandatory Use<br>Judicial Council of California<br>POS-010 [Rev. January 1, 2007] | **PROOF OF SERVICE OF SUMMONS** | Code of Civil Procedure, § 417.10<br>**POS010-1/LA496259** |
|---|---|---|

| PETITIONER:  CALIFORNIA LAND STEWARDSHIP COUNCIL LLC | CASE NUMBER: |
|---|---|
| RESPONDENT:  COUNTY OF SHASTA and its BOARD OF SUPERVISORS | 204273 |

c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

   (1) on *(date):*                    *(2) from  (city):*

   (3) ☐ with two copies of the  *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgment of Receipt.) (Code Civ. Proc., § 415.30.)

   (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

d. ☐ **by other means** *(specify means of service and authorizing code section):*

      ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

  a. ☐ as an individual defendant.
  b. ☐ as the person sued under the fictitious name of  *(specify):*
  c. ☐ as occupant.
  d. ☑ On behalf of **County of Shasta**
      under the following Code of Civil Procedure section:

      ☐ 416.10 (corporation)           ☐ 415.95 (business organization, form unknown)
      ☐ 416.20 (defunct corporation)       ☐ 416.60 (minor)
      ☐ 416.30 (joint stock company/association)  ☐ 416.70 (ward or conservatee)
      ☐ 416.40 (association or partnership)    ☐ 416.90 (authorized person)
      ☑ 416.50 (public entity)            ☐ 415.46 (occupant)
                              ☐ other:

7. **Person who served papers**
  a. Name:  **Amonie R. Thorne - Nationwide Legal, LLC REG: 12-234648**
  b. Address:  **1609 James M Wood Blvd.  Los Angeles, CA 90015**
  c. Telephone number:  **(213) 249-9999**
  d. **The fee** for service was: **$ 448.70**
  e. I am:
    (1) ☑ not a registered California process server.
    (2) ☐ exempt from registration under Business and Professions Code section 22350(b).
    (3) ☐ registered California process server:
      (i) ☐ owner     ☐ employee    ☐ independent contractor.
      (ii) Registration No.:  **000238**
      (iii) County:  **Shasta**

8. ☑ **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

   or

9. ☐ **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: **2/29/2024**

**N** **Nationwide Legal, LLC**
**1609 James M Wood Blvd.**
**Los Angeles, CA 90015**
**(213) 249-9999**
**www.nationwideasap.com**

 

_____   ▶   _____
      **Amonie R. Thorne**
    (NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)         (SIGNATURE)

**SUPERIOR COURT OF THE STATE OF CALIFORNIA
FOR THE COUNTY OF SHASTA**

**HON. STEPHEN H BAKER**

Dept. 64/bar

# 24CV-0204273

**CALIFORNIA LAND STEWARDSHIP COUNCIL, LLC**

**VS.**

**COUNTY OF SHASTA AND ITS BOARD OF SUPERVISORS**

**NATURE OF PROCEEDINGS:    ORDER SETTING STATUS CONFERENCE**

      **UPON THE COURT'S OWN MOTION,** this matter is set for Review regarding status of the writ on <u>**Monday, May 13, 2024, at 9:00 a.m., in Department 64.**</u>

      The parties are ordered to meet and confer and provide the Court with a proposed briefing and hearing schedule at least five (5) days prior to said Review hearing. At the Review hearing the parties should be prepared to address: 1) status of service; 2) confirm all parties have appeared; and 4) provide the Court with a proposed briefing schedule and available dates for a hearing on the Petition.

      Petitioner is ordered to serve a copy of this order on all parties and to file proof of service thereof with the Court at least (5) days prior to said Review hearing.

Dated: March \_\_\_\_, 2024

                           **STEPHEN H BAKER
                             Judge of the Superior Court**

**CERTIFICATE OF MAILING**
State of California, County of Shasta

I, the undersigned, certify under penalty of perjury under the laws of the State of California that I am a deputy clerk of the above-entitled court and not a party to the within action; that I mailed a true and correct copy of the above to each person listed below, by depositing same in the United States Post Office in Redding, California, enclosed in sealed envelopes with postage prepaid.

PAUL HASTINGS LLP  101 CALIFORNIA STREET, 48TH FLOOR, SAN FRANCISCO, CA  94111

Dated: March \_\_\_\_, 2024

                                Deputy Clerk

1 | NAVI SINGH DHILLON (SBN 279537)
navidhillon@paulhastings.com
2 | CHRISTOPHER J. CARR (SBN 184076)
chriscarr@paulhastings.com
3 | DYLAN J. CROSBY (SBN 299536)
dylancrosby@paulhastings.com
4 | LUCAS V. GRUNBAUM (SBN 314180)
lucasgrunbaum@paulhastings.com
5 | PAUL HASTINGS LLP
101 California Street, 48th Floor
6 | San Francisco, California 94111
Telephone:  (415) 856-7000
7 |
8 | Attorneys for Petitioner and Plaintiff
CALIFORNIA LAND STEWARDSHIP
COUNCIL LLC
9 |

**FILED**

MAR 2 1 2024

SHASTA COUNTY SUPERIOR COURT
BY: E. WIECHMAN, DEPUTY CLERK

10 |

11 |

SUPERIOR COURT OF CALIFORNIA

12 |

COUNTY OF SHASTA

13 |

14 |

15 | CALIFORNIA LAND STEWARDSHIP
COUNCIL LLC,
16 |
17 |             Petitioner and Plaintiff,
18 | v.
19 | COUNTY OF SHASTA and its BOARD OF
SUPERVISORS,
20 |
21 |             Respondents and Defendants.

Case No. 24-CV-204273

**NOTICE RE ORDER SETTING STATUS
CONFERENCE**

Action Filed: February 13, 2024
Trial Date:    None set

By Fax

22 |

23 |

24 |

25 |

26 |

27 |

28 |

- 1 -

1        Please take notice that the Court has entered an order setting a Status Conference in this

2  action for May 13, 2024, at 9:00 a.m., in Department 64.  A true and correct copy of the Court's

3  Order Setting Status Conference is attached hereto as **Exhibit A.**

4

5  DATED:  March 19, 2024                PAUL HASTINGS LLP

6

7                             By: _____

8                               NAVI SINGH DHILLON

9                             Attorneys for Petitioner and Plaintiff
                                CALIFORNIA LAND STEWARDSHIP

10                            COUNCIL LLC

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 2 -

NOTICE RE ORDER SETTING STATUS CONFERENCE

# EXHIBIT A

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## FOR THE COUNTY OF SHASTA

### HON. STEPHEN H BAKER

Dept. 64/bar

# 24CV-0204273

**CALIFORNIA LAND STEWARDSHIP COUNCIL, LLC**

**VS.**

**COUNTY OF SHASTA AND ITS BOARD OF SUPERVISORS**

**NATURE OF PROCEEDINGS:    ORDER SETTING STATUS CONFERENCE**

      **UPON THE COURT'S OWN MOTION,** this matter is set for Review regarding status of the writ on **Monday, May 13, 2024, at 9:00 a.m., in Department 64.**

      The parties are ordered to meet and confer and provide the Court with a proposed briefing and hearing schedule at least five (5) days prior to said Review hearing. At the Review hearing the parties should be prepared to address: 1) status of service; 2) confirm all parties have appeared; and 4) provide the Court with a proposed briefing schedule and available dates for a hearing on the Petition.

      Petitioner is ordered to serve a copy of this order on all parties and to file proof of service thereof with the Court at least (5) days prior to said Review hearing.

Dated:  March 11, 2024

**STEPHEN H BAKER**
**Judge of the Superior Court**

CERTIFICATE OF MAILING
State of California, County of Shasta
I, the undersigned, certify under penalty of perjury under the laws of the State of California that I am a deputy clerk of the above-entitled court and not a party to the within action; that I mailed a true and correct copy of the above to each person listed below, by depositing same in the United States Post Office in Redding, California, enclosed in sealed envelopes with postage prepaid.

PAUL HASTINGS LLP  101 CALIFORNIA STREET, 48TH FLOOR, SAN FRANCISCO, CA 94111

Dated:  March 12, 2024

Deputy Clerk

1

## PROOF OF SERVICE

2

3    I am employed in the City of San Francisco and County of San Francisco, State of

California.  I am over the age of 18, and not a party to the within action.  My business

4

address is 101 California Street, Forty-Eighth Floor, San Francisco, CA 94111.

5

6    On March 20, 2024, I served the foregoing document(s) described as:

## NOTICE RE ORDER SETTING STATUS CONFERENCE

7

8    on the interested parties as follows:

9    Kristin Gulling-Smith
     Staff Services Analyst
10   County of Shasta
     1450 Court Street
11   Redding, CA  96001-1683

12

13   ☒       **VIA U.S. MAIL:**
             I am readily familiar with the firm's practice of collection and processing of
14           correspondence for mailing.  Under that practice such sealed envelope(s) would be
             deposited with the U.S. postal service on March 20, 2024 with postage thereon
15           fully prepaid, at San Francisco, California.

16           I declare under penalty of perjury under the laws of the State of California
17   that the above is true and correct.

18           Executed on March 20, 2024, at San Francisco, California.

19                                              *Ken Hartley*

20                                              _____
                                                Ken Hartley
21

22

23

24

25

26

27

28

PROOF OF SERVICE